# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In Re:  PFO Global, Inc., *et al.*[1] | § | Case No. 17-30355 |
| Debtors. | § § § | Chapter 7 |
| WESCO INSURANCE COMPANY | § § | |
| Plaintiff | § § | |
| v. | § § | Adv. Proc. No. _____ |
| CHARLES POSTERNACK; EDWARD GREENE; EDWARD DEAN BUTLER; JOSEPH B. SCHIMMEL; MATTHEW G. CEVASCO; RUDOLF SUTER; MAHESH SHETTY; TIMOTHY KINNEAR; BRIGITTE ROUSSEAU, and SHAWN K. BROWN, CHAPTER 7 TRUSTEE FOR THE ESTATE OF PFO GLOBAL, INC., *et al.*, | § § § § § § § § § § § § | |
| Defendants. | § | |

## ADVERSARY COMPLAINT FOR
## DECLARATORY AND OTHER RELIEF

**TO THE HONORABLE HARLIN D. HALE:**

COMES NOW, Plaintiff Wesco Insurance Company ("Wesco") and files this Adversary Complaint for Declaratory and Other Relief against Charles Posternack, Edward Greene, Edward Dean Butler, Joseph B. Schimmel, Matthew G. Cevasco, Rudolf Suter, Mahesh Shetty, Timothy Kinnear, and Brigitte Rousseau (referred to collectively as the "Directors & Officers"), as well as

---

[1] The debtors, case numbers, and last four digits of U.S. tax ID numbers are as follows: PFO Global, Inc. (Case No. 17-30355, Tax ID 4332); Pro Fit Optix Holding Co., LLC (Case No. 17-30358, Tax ID 3919); Pro Fit Optix, Inc. (Case No. 17-30361, Tax ID 0492); PFO Technologies, LLC (Case No. 17-30362, Tax ID 1430 ); PFO Optima, LLC (Case No. 17-30363, Tax ID 5197); PFO MCO, LLC (Case No. 17-30365, Tax ID 4686) (collectively, "PFO").

Shawn K. Brown, Chapter 7 Trustee (the "Trustee") for the Estate of PFO Global, Inc., *et al.* ("PFO"), and alleges, on information and belief, as follows:

## NATURE OF THE CASE

1. Wesco brings this action seeking a judicial declaration that Directors and Officers and Public Company Liability Insurance Policy No. EUW1418893 00 (the "Policy"), that Wesco issued to PFO, does not afford any potential coverage for a pending adversary proceeding brought by the Trustee against the Directors & Officers.

2. More specifically, on or about January 30, 2019, the Trustee commenced an adversary proceeding in this Court against the Directors & Officers in an action styled *Shawn K. Brown v. Charles Posternack, et al.*, Case No. 19-03012-hdh (the "Trustee Action").

3. The Directors & Officers submitted the Trustee Action to Wesco for coverage under the Policy. Wesco agreed to defend the Directors & Officers in connection with the Trustee Action pursuant to the Policy, subject to a full and complete reservation of rights.

4. The Policy is subject to a limit of liability of $5 million per claim and in the aggregate.

5. Wesco has determined that the Policy does not afford any potential coverage for the Trustee Action because it is not a Claim[2] that was first made during the Policy Period.

6. Accordingly, Wesco seeks a judicial declaration that is has no duty to defend and no duty to indemnify the Directors & Officers in connection with the Trustee Action.

## PARTIES

7. Wesco is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business in the State of New York.

---

[2] Capitalized terms not otherwise defined herein and terms appearing in **bold font** are defined in the Policy.

8. On information and belief, Defendant Charles Posternack ("Posternack") is an individual residing in Palm Beach County, Florida. Posternack was a PFO Director during the relevant time period. Posternack was PFO's Chairman of the Board. Posternack may be served with process at his usual place of abode at 1700 S. Ocean Blvd., #5D, Pompano Beach, Florida 33062.

9. On information and belief, Defendant Edward Greene ("Greene") is an individual residing in Midlothian, Virginia. Greene was a PFO Director during the relevant time period. Greene may be served with process at his usual place of abode at 6003 Country Walk Road, Midlothian, Virginia 23112.

10. On information and belief, Defendant Edward Dean Butler ("Butler") is an individual residing in the United Kingdom. Butler was a PFO Director during the relevant time period. Butler may be served with process at his usual place of abode at Mere Hall, Broughton Green, Droitwich, Worcestershire WR9 7EE, United Kingdom.

11. On information and belief, Defendant Joseph B. Schimmel ("Schimmel") is an individual residing in Miami-Dade County, Florida. Schimmel was a Director during the relevant time period. Schimmel may be served with process at his usual place of employment at Cohen, Chase.

12. Collectively, Posternack, Butler, Greene, and Schimmel are also referred to as the "Directors."

13. On information and belief, Defendant Matthew G. Cevasco ("Cevasco") is an individual residing in White House Station, New Jersey. Cevasco was PFO's Chief Executive Officer from March 2016 until he resigned in June 2017. Cevasco served as CEO during a portion of the relevant time period. Cevasco may be served with process at his usual place of abode at 15 Indian Purchase, White House Station, New Jersey 08889-4021.

14. On information and belief, Defendant Rudolf Suter ("Suter") is an individual residing in Luzern, Switzerland. Suter also served as PFO's CEO and a member of the Board of Directors from 2010 until March 2016, which was during a portion of the relevant time period. Suter may be served with process at his usual place of abode at Alpenquai 12, CH-6005, Luzern, Switzerland.

15. On information and belief, Defendant Timothy W. Kinnear ("Kinnear") is an individual residing in Rockwall County, Texas. Kinnear was PFO's Chief Financial Officer until 2015. Kinnear was PFO's Chief Financial Officer during some of the relevant time period. Kinnear can be served with process at his usual place of abode at 902 High Plains Trail, Royse City, Texas 75189.

16. On information and belief, Defendant Mahesh Shetty ("Shetty") is an individual residing in Dallas County, Texas. Shetty was PFO's Chief Research Officer, Principal Financial Officer, and Financial Consult from 2015 until he resigned in June 2017. Shetty can be served with process at his usual place of abode at 2708 Arbor Ct., Richardson, Texas 75082.

17. On information and belief, Defendant Brigitte Rousseau ("Rousseau") is an individual residing in Denton County, Texas. Rousseau was PFO's Chief Financial Officer during some of the relevant time period. Rousseau can be served with process at her usual place of abode at 2812 Stratford Lane, Flower Mound, Texas 75028.

18. Collectively, Cevasco, Suter, Shetty, Kinnear, and Rousseau are referred to as the "Officers."

19. Defendant Shawn K. Brown (the "Trustee") is the duly-appointed Chapter 7 Trustee (formerly Chapter 11 Trustee) for the PFO Global, Inc., *et. al.* bankruptcy estates. The Trustee is being sued in this action in his capacity as the Trustee, and as the representative of Debtors' estate, in any and all other legal, equitable, or actual capacities necessary to lawfully and

appropriately bring all actions alleged. Accordingly, the Trustee's citizenship for purposes of diversity jurisdiction is that of the debtors.

20. PFO consists of Debtors PFO Global, Inc., and its related entities, Pro Fit Optix Holding Company, LLC, Pro Fit Optix, Inc., Pro Technologies, LLC, PFO Optima, LLC, and PFO MCO, LLC. PFO Global, Inc. wholly owns Pro Fit Optix Holding Company, LLC. In turn, Pro Fit Optix Holding Company, LLC wholly owns 100% of the equity interests in Pro Fit Optix, Inc., Pro Technologies, LLC, PFO Optima, LLC, and PFO MCO, LLC.

21. PFO was incorporated in Texas in 2015 and had its principal place of business in Dallas, Texas prior to the filing of its bankruptcy petition.

22. Pro Fit Optix, Inc. was organized under the laws of the State of Wyoming and had its principal place of business in Dallas, Texas prior to the filing of its bankruptcy petition.

23. Those debtors that are organized as limited liability companies are wholly owned by Pro Fit Optix, Inc. or PFO Global, Inc. and therefore are deemed to be citizens of the same states as those corporations.

24. PFO filed for Chapter 11 bankruptcy protection on January 31, 2017. The cases are jointly administered.

25. On June 21, 2017, Shawn K. Brown was appointed as the Chapter 11 Trustee. The bankruptcy has since been converted to a proceeding under Chapter 7.

26. Accordingly, for purposes of diversity jurisdiction, the Trustee is deemed to be a citizen of Texas and/or Wyoming.

## JURISDICTION AND VENUE

27. Wesco brings this adversary proceeding pursuant to Bankruptcy Rule 7001, 11 U.S.C. §§ 542, 544, 28 U.S.C. § 2201, and Texas state law.

28. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 because it is a civil proceeding related to a case under the Bankruptcy Code. This Court also has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1332 because Wesco and all Defendants are of diverse citizenship and, in light of the Policy's $5 million limit of liability, the amount in controversy exceeds $75,000.

29. All Defendants named herein are subject to the personal jurisdiction of this Court. The claims in this case arise from an insurance policy issued to PFO, the Defendants' roles as Directors & Officers of PFO, and an adversary proceeding pending in this Court brought by the Trustee against the other Defendants in their capacities as such. PFO was headquartered in this District, and the Defendant Directors & Officers either reside in Texas or have had sufficient minimum contacts such that they are subject to this Court's jurisdiction under applicable law. Finally, as the Trustee for PFO's estate, the Trustee is subject to this Court's personal jurisdiction as to all matters related to the PFO estate and the PFO bankruptcy proceedings.

30. Venue is proper in this District pursuant to 28 U.S.C. § 1409 in that the PFO bankruptcy proceedings originated in this District.

31. This is a non-core proceeding pursuant to 28 U.S.C. § 157(b)(2). Wesco consents to the entry of final orders and judgments by this Court for all non-core proceedings, pursuant to Fed. R. Bankr. P. 7008.

## THE POLICY

32. Wesco issued to Named Insured PFO Global, Inc. a Directors and Officers and Public Company Liability Coverage Policy, policy number EUW1418893 00, with a Policy Period of June 30, 2016 to June 30, 2017 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit A.

33. The Policy's GENERAL DECLARATIONS state:

> THIS POLICY PROVIDES CLAIMS-MADE COVERAGE. SUCH COVERAGE IS LIMITED TO LIABILITY FOR (I) **CLAIMS** FIRST MADE AGAINST **INSUREDS** DURING THE **POLICY PERIOD** OR, IF APPLICABLE, THE EXTENDED REPORTING PERIOD, AND (II) OTHER MATTERS, CIRCUMSTANCES OR **WRONGFUL ACTS** FIRST OCCURRING DURING THE **POLICY PERIOD** AND COVERED UNDER THIS POLICY. COVERAGE UNDER THIS POLICY IS CONDITIONED UPON NOTICE BEING TIMELY PROVIDED TO THE **INSURER** AS REQUIRED UNDER SECTION VI. OF THE GENERAL TERMS AND CONDITIONS. ANY COVERED **DEFENSE COSTS**, AND **INVESTIGATION COSTS** SHALL REDUCE THE LIMITS OF LIABILITY AVAILABLE TO PAY JUDGMENTS OR SETTLEMENTS, AND MAY BE APPLIED AGAINST THE RETENTION AMOUNT. . . THE **INSURER** DOES NOT ASSUME ANY DUTY TO DEFEND. PLEASE READ THIS POLICY CAREFULLY AND REVIEW ITS COVERAGE WITH YOUR INSURANCE AGENT OR BROKER.

34. The Policy's Insuring Agreement A provides coverage for "**Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured** . . . ."

35. Under the Policy, "**Insured** means any: 1. **Company**; or 2. **Individual Insured**."

36. Under the Policy, in relevant part, "**Company** means (i) the **Named Insured**; (ii) any **Subsidiary**; and (iii) the **Named Insured** or any **Subsidiary** as a debtor-in-possession under United States of America bankruptcy law or similar legal status under foreign law."

37. Under the Policy, "**Individual Insured** means any: 1. **Executive** 2. **Employee**; or 3. **Outside Entity Executive**."

38. The Policy defines Claim to mean, in relevant part, the following:

> 1. a written demand, other than a **Derivative Demand**, for monetary, non-monetary or injunctive relief (including any request to toll or waive any statute of limitations);

> 2. a civil, criminal, administrative, regulatory or arbitration proceeding for monetary, nonmonetary or injunctive relief which is commenced by:
>
> (i) service of a complaint or similar pleading;
>
> (ii) return of an indictment, information or similar document (in the case of a criminal proceeding); or
>
> (iii) receipt or filing of a notice of charges;
>
> 3. a civil, criminal, administrative or regulatory investigation of an **Individual Insured** by a federal, state, local or foreign law enforcement authority or the enforcement body of, any securities exchange . . .
>
>             \*            \*            \*
>
> 5. an informal regulatory or administrative investigation of an **Insured Person** or **Company** for a **Wrongful Act**.

39. The Policy provides as follows with regard to the Extended Reporting Period:

> Upon expiration or cancellation of this policy, other than for non-payment of premium, the **Insureds** shall have the right, upon payment of the additional premium indicated in Item 5. of the General Declarations not more than 30 days after the earlier of the expiration date or effective date of cancellation, to an extension of the Notice of Claim provision described in VI. Reporting and Notice of these General Terms and Conditions, for the length of time shown in Item 5. of the General Declarations, commencing on the earlier of the expiration date or effective date of cancellation. Such extension of time to report a **Claim** (herein referred to as the Extended Reporting Period wherever it appears in this policy) shall apply only to **Wrongful Acts** committed, attempted, or allegedly committed or attempted, prior to the earlier of the expiration date or effective date of cancellation, and which are not otherwise excluded by any terms and conditions of this policy. Any **Claim** first made during the Extended Reporting Period shall be deemed to have been made during the **Policy Period**.
>
> As a condition precedent to the right to purchase the Extended Reporting Period, the total premium for this policy must have been paid and the premium for the Extended Reporting Period must be paid in full with written notice of the **Insured's** election to purchase the Extended Reporting Period not more than 30 days after the earlier of the expiration date or effective date of

cancellation. The **Insured's** right to purchase the Extended Reporting Period shall otherwise lapse.

40. The Policy further provides that "The **Insured** shall, as a condition precedent to the obligations of the **Insurer** under this policy, give notice to the **Insurer** . . . of . . . (i) any **Claim** made against an **Insured**, . . . as soon as practicable after the Chief Executive Officer, Chief Financial Officer, Risk Manager, or General Counsel become aware of such, but no later than 90 days after the expiration date shown in Item 2 of the General Declarations or its earlier cancellation or prior to the end of the Extended Reporting Period, if applicable."

41. In addition, with respect to potential claims, the Policy provides as follows:

> If during the **Policy Period** or the Extended Reporting Period, if applicable, the **Insureds** become aware of any circumstances or **Wrongful Act** which may reasonably be expected to give rise to a **Claim** being made against the **Insureds** and give notice, by mail or electronically to the address set forth in Item 4. (b) of the General Declarations of such circumstances, along with a description of the alleged **Wrongful Act,** the allegations anticipated, the reasons for anticipating a **Claim**, and full particulars as to dates, persons and entities involved, then any **Claim** which subsequently is made against the **Insureds** and reported to the **Insurer** alleging, arising out of, based upon or attributable to such circumstances or alleging any **Wrongful Act** which is the same as or is a **Related Wrongful Act** to that alleged or contained in such circumstances, shall be considered made at the time such notice of such circumstance or **Wrongful Act** originally was reported.

42. The Policy expired under its terms on June 30, 2017. None of the Insureds sent written notice of the Insured's election to purchase the Extended Reporting Period at any point in time, nor did any of the Insureds pay the premium for the Extended Reporting Period. Thus, the Insureds' right to purchase the Extended Reporting Period lapsed on July 30, 2017, and does not apply.

## NOTICE LETTERS RECEIVED BY WESCO

43. Wesco first received notice of a claim or potential claim asserted against any Insured under the Policy on August 25, 2017, when it received a letter dated August 25, 2017, from the Trustee's counsel (the "Trustee Letter"). A true and correct copy of the Trustee Letter is attached hereto as Exhibit B. The letter purportedly was sent to "put [Wesco] on notice in accordance with the terms of the above referenced policy of Claims under the subject policy." The Trustee Letter contended that "[t]he Claims are made against all officers and directors of PFO Global, Inc. and the other entities referenced above."

44. The Trustee Letter described the nature of the purported Claims to include but not be limited to the following:

1. The decision to file the Bankruptcy Petitions when there were other options available to salvage the business of the Debtor's [sic];

2. The decision to sell certain litigation Claims owned by the Debtor's [sic] to Hillair Capital Management ("Hillair") for inadequate consideration, and without any offer to other note holders or shareholders, and without advance discussion without a quorum or qualifying board meeting;

3. The decision to support giving away the assets of the Debtors under an initial credit bid by Hillair which would have produced no value to the Debtors, unsecured creditors or equity holders;

4. The failure to properly implement the pre-filing business plan which would have avoided the necessity of the bankruptcy filings;

5. Failure to disclose that the Debtors' EyeX3 Laser Tracer was failing and unable to be commercially released prior to accepting investment capital from investors that were told the opposite;

6. Failure to disclose that there were quality control operational problems that caused the main customer outlet – Vision Care Direct – to delay and decrease orders, at the time the Debtor accepted investment capital stating the opposite;

7. Failure to perform in accordance with binding contracts with accounts receivable investors and misrepresenting revenues received;

8. Not acting on CEO dishonesty once brought to the Board's attention repeatedly. The CEO is now in prison;

9. Allowing the CEO to stay out of the US without any substitute/alternative direction of the Company;

10. Board and Management holding secret meetings and taking materially self-benefiting actions without advising the authorized Board Observer representing noteholders and shareholders;

11. Continuing to pay management following the filing of the bankruptcies without management performing any function, and taking actions that were not to the benefit of the unsecured creditors.

45. The Trustee Letter did not demand any form of relief. Indeed, the Trustee Letter contended that the Trustee had only been appointed to that position 60 days prior and was still developing "information pertaining to these Claims."

46. Similar to the Trustee Letter, also on August 25, 2017, Dawson James Securities, Inc. ("Dawson James") sent a letter to Wesco asserting that it "has determined that it has claims against the following people who were senior executives or directors of PFO during the relevant period, and Dawson [James] is in the process of engaging counsel to assert those claims" (the "Dawson James Letter"). A true and correct copy of the Dawson James Letter is attached hereto as Exhibit C. The Dawson James letter alleged that its "Claims are made against certain of the officers and directors of PFO Global, Inc. who served from November 2014 through the present, including but not limited to Charles Posternack, Timothy W. Kinnear, and Rudolf Suter." It further contended that Dawson James' investigation of the matter was ongoing and that it may assert claims against other individuals.

47. Dawson James contended that its Claims involved the following matters:

1. Failure to disclose that PFO's EyeX3 Laser Tracer was failing and unable to be commercially released prior to

      accepting investment capital from Dawson and investors that were told the opposite;

2. Failure to disclose to Dawson and prospective investors introduced by Dawson that there were quality control operational problems that caused the main customer outlet - Vision Care Direct - to delay and decrease orders, at the time the Debtor accepted investment capital stating the opposite;

3. Failure to perform in accordance with binding contracts with accounts receivable investors and misrepresenting revenues received;

4. Failure to disclose to Dawson and investors introduced by Dawson the insider dishonesty, misappropriation of funds to prospective investors;

5. Overstating PFO's operating prospects and Board and Management holding secret meetings and taking materially self-benefiting actions without advising the authorized Board Observer whose presence was arranged so that the observer could represent the interest of noteholders and shareholders; and

6. Numerous material omissions to state material facts and material misstatement of material facts made by officers and directors of PFO in connection with each of the private placement offerings that were made by PFO Global, Inc. ("PFO") during the period from November 2014 through June 2015, including but not limited to, including falsely representing various groups/entities as active customers or strategic partners, and falsely representing various key assets as being proprietary to PFO.

48. Like the Trustee Letter, the Dawson James Letter does not demand any form of relief.

49. Neither the Trustee Letter nor the Dawson James Letter is any type of proceeding, regulatory investigation, or administrative investigation. Further, while both letters purport to assert "claims" against several Insureds, neither the Trustee Letter nor the Dawson James Letter demands any form of relief or requests tolling or waiver of the statute of limitation. Accordingly, neither the Trustee Letter nor the Dawson James Letter is a Claim as defined in the Policy.

## WESCO'S RESPONSE TO THE NOTICES PURSUANT TO THE POLICY

50. Wesco promptly issued an acknowledgement letter to Dawson James on August 28, 2017, and to counsel for the Trustee on August 29, 2017. Those letters advised the claimants that Wesco had assigned the matter to Alicia Garcia and provided her contact information. Ms. Garcia followed up with separate emails to the claimants advising of her assignment to the matter and requesting additional information and/or documentation relating to the purported claims.

51. Between December 2017 and June 2018, Ms. Garcia followed up with several of the Directors & Officers multiple times to inquire if there had been any developments in this matter. Each time she was advised that they had heard nothing further from the Trustee or Dawson James. Accordingly, on June 4, 2018, Ms. Garcia advised the Directors & Officers that she would be closing her file, but that they should promptly advise her if they received any further correspondence or a complaint relating to this matter.

52. On January 7, 2019, Wesco reopened its file because it was advised that the Trustee had filed a motion in the PFO bankruptcy proceedings to examine several of the Directors & Officers pursuant to Bankruptcy Rule 2004.

53. On January 31, 2019, Wesco issued a separate reservation of rights letter to each of the Directors & Officers that was to be the subject of a Rule 2004 Examination. A true and correct copy of these letters is attached hereto as Composite Exhibit D. The January 31, 2019 letters advised that the Rule 2004 Examinations were not Claims and that Wesco therefore had no duty to defend. However, the letter continued, "as a prophylactic measure to protect the interests of the insureds against a claim that might be covered under the Policy, [Wesco] agrees to retain counsel to represent the insureds that may be subject to a Rule 2004 Examination, subject to the rights reserved in this letter." The letters further apprised the Insureds that [Wesco] expressly reserved its rights to "withdraw from the defense of you with respect to the Rule 2004 Examinations" and

"[t]he right to file an action for declaratory relief to determine the respective rights and obligations of [Wesco] and yourself (or any other Insured) under the Policy." Finally, the letters provided [Wesco]'s consent to the Insureds' retention of their preferred counsel, Peter Lewis and Bryan Haynes of the law firm Scheef & Stone, LLP.

## THE TRUSTEE ACTION

54. The Trustee filed suit on January 30, 2019, naming as defendants the following individuals: Charles Posternack, Edward Greene, E. Dean Butler, Joseph B. Schimmel, Matthew G. Cevasco, Rudolf Suter, Mahesh Shetty, Timothy Kinnear, and Brigitte Rousseau (the aforementioned "Trustee Action"). A true and correct copy of the Complaint in the Trustee Action is attached hereto as Exhibit E. The allegations of the Trustee Action Complaint largely tracked the issues raised in the Trustee Letter of August 25, 2017.

55. On or about February 11, 2019, Wesco received notice that the Trustee Action had been filed.

56. On March 1, 2019, Wesco again issued a separate reservation of rights letter to each of the Insured Directors & Officers that had been named as a defendant in the Trustee Action. True and correct copies of these letter is attached hereto as Composite Exhibit F. The March 1, 2019 letters advised the Directors & Officers as follows:

> Wesco has concluded that there is a potential for coverage for you under the Policy with respect to the [Trustee] Action. There is, however, no coverage for any Loss arising from any Wrongful Acts alleged in the [Trustee] Action that do not qualify as the same Wrongful Acts or Related Wrongful Acts to those reported to Wesco by means of the letters, dated August 25, 2017, from Dawson James Securities, Inc. and the attorneys for Shawn Brown (the "August 25, 2017 Letters").

57. The March 1, 2019 letters expressly reserved Wesco's "right to refuse to continue to reimburse defense fees and costs if it determined [sic] that there is no potential for coverage for

you with respect to the [Trustee] Action," and "to file an action for declaratory relief to determine the respective rights and obligations of Wesco and yourself (or any other Insured) under the Policy."

58. The March 1, 2019 letters also expressly reserved Wesco's rights to "to recoup any monies paid out for investigation, defense or indemnity by Wesco of any claim or judgment for which it determined by Wesco that there is no potential for coverage," and "the right to amend its coverage position and to apply any of the terms, conditions, exclusions, and other provisions of the Policy whether or not they have been discussed in this letter."

59. As with the Rule 2004 Examinations, the letter again conveyed Wesco's consent to the retention of the Insureds' preferred counsel, Peter Lewis and Bryan Haynes of Scheef & Stone, LLP.

60. On December 3, 2019, the Bankruptcy Court entered an Order granting in part, and denying in part the Directors' & Officers' Motion to Dismiss and Motion for a More Definite Statement.

61. Accordingly, the Trustee filed an Amended Complaint on January 10, 2020, a true and correct copy of which is attached hereto as Exhibit G. The Amended Complaint did not assert any new claims or allegations that were materially different from the initial Complaint. The Amended Complaint omitted the cause of action against Posternack, Butler, Greene, Schimmel, Cevasco, and Shetty for allegedly Usurping Corporate Opportunity and provided further detail as to each of the Directors' & Officers' alleged involvement in and responsibility for the misstatements and omissions previously alleged in the initial Complaint.

**THERE IS NO POTENTIAL COVERAGE FOR THE TRUSTEE ACTION**

62. The Policy is a claims-made policy that affords potential coverage only for Claims that are first made during the Policy Period. The Policy expired under its terms on June 30, 2017 and the Insureds did not elect to purchase an Extended Reporting Period.

63. As noted above, neither the Trustee Letter nor the Dawson James Letter is a Claim because neither seeks any form of relief or requests the tolling or waiver of any applicable statute of limitations.

64. Even if the Trustee Letter or Dawson James Letter were a Claim, it would be a Claim that was first made no earlier than August 25, 2017, nearly two months after the Policy expired and thus not during the Policy Period.

65. Because the Insureds did not purchase an Extended Reporting Period, the Policy does not afford them with any right to coverage for a Claim that was first made after the Policy Period expired.

66. Further, "[t]he Insured's right to purchase the Extended Reporting Period [had] otherwise lapse[d]" on July 30, 2017. Accordingly, the Insureds could not purchase an Extended Reporting Period after they learned of potential claims by way of the Trustee Letter and/or Dawson James Letter.

67. In addition, there is no basis upon which to otherwise deem the Trustee Action to be a Claim that was first made during the Policy Period.

68. That is, the Policy provides that if the Insureds provide notice to Wesco during the Policy Period or Extended Reporting Period, if applicable, of circumstances or Wrongful Acts that may reasonably be expected to give rise to a Claim against the Insureds, any subsequent Claim arising out of those circumstances shall be deemed to have been first made at the time of the notice.

69.   However, no such notice of circumstances was provided to Wesco during the Policy Period.  Indeed, the Directors & Officers learned of the potential claims against them by the Trustee and Dawson James at the same time that Wesco did, i.e., by way of letters dated August 25, 2017, well after the Policy Period had expired.

70.   Because the Insureds did not purchase an Extended Reporting Period, a notice of circumstances provided to Wesco after the Policy Period does not operate to extend the Policy's coverage to subsequent Claims arising out of those noticed circumstances.

71.   Not only is the Extended Reporting Period inapplicable here, but with respect to notices of circumstances, the Policy's deemer clause provides that any subsequent Claim "shall be considered made at the time such notice of such circumstance . . . originally was reported." Therefore, even if Wesco accepted the Trustee Letter and/or the Dawson James Letter as a notice of circumstances, and the Trustee Action were viewed as a Claim arising out of those previously noticed circumstances, the Trustee Action would be deemed a Claim that were first made when Wesco received the Trustee Letter and Dawson James Letter on August 25, 2017, well after the Policy Period had expired on June 30, 2017.

72.   A dispute has arisen between the parties as to whether the Policy provides any potential coverage for the Trustee Action and whether Wesco has a duty to defend and/or indemnify the Directors & Officers in connection with the Trustee Action.

73.   An actual controversy exists in that Wesco believes that the Policy does not provide any potential coverage, and therefore, Wesco desires to withdraw from its defense of the Trustee Action under a reservation of rights and seeks to recoup all amounts it has expended to date as defense costs on behalf of the Directors & Officers in connection with the pending Trustee Action.

## COUNT ONE – DECLARATORY JUDGMENT

74. Plaintiff incorporates by reference, as if fully set forth herein, paragraphs 1 through 73, inclusive.

75. The Policy's Insuring Agreement A provides coverage for "**Loss** of an **Individual Insured** arising from a **Claim** first made against such **Individual Insured** during the **Policy Period** or the Extended Reporting Period, if applicable, for any actual or alleged **Wrongful Act** of such **Individual Insured**."

76. Neither the Trustee Letter nor the Dawson James Letter is a Claim as defined in the Policy.

77. Even if the August 25, 2017 Trustee Letter or Dawson James Letter qualifies as a Claim as defined in the Policy, the Claims were not first made during the Policy Period, which expired on June 30, 2017.

78. The Extended Reporting Period is inapplicable because the Insureds did not make a written request for or pay the additional premium for the Extended Reporting Period within 30 days after the Policy expired, i.e., by July 30, 2017.

79. The Trustee Action was commenced on January 30, 2019, and is not a Claim that was first made during the Policy Period, which expired on June 30, 2017.

80. Even if the Trustee Action were deemed to be first made at the time that Wesco received notice of the Trustee Letter on August 25, 2017, the Trustee Action would still be deemed to be a Claim that was first made after the Policy Period expired on June 30, 2017.

81. While Wesco has been defending the Directors & Officers in connection with the Trustee Action, including in connection with certain Rule 2004 Examinations that preceded the commencement of the Trustee Action, Wesco has done so under a full reservation of rights.

82. Wesco's reservation of rights expressly included the right to withdraw from its defense of the Trustee Action, to commence an action for declaratory relief to obtain a judicial determination of the parties' rights and obligations pursuant to the Policy, and to recoup any amounts it has paid for the investigation and defense of any matter for which Wesco has determined the Policy does not afford any potential coverage.

83. Accordingly, Wesco is entitled to a judicial declaration that the Policy affords no potential coverage for the Trustee Action because it is not a Claim that was first made during the Policy Period and, therefore, Wesco has no duty to defend and no duty to indemnify the Directors & Officers in connection with the Trustee Action.

84. Further, Wesco is entitled to an award reimbursing all amounts Wesco has paid on behalf of the Directors & Officers for their defense of the Trustee Action.

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff Wesco Insurance Company respectfully requests that this Court enter judgment in favor of Plaintiff and against the Defendants as follows:

A. Declaring that the Policy does not afford any potential coverage for the Trustee Action or require Wesco to defend the Directors & Officers in connection with the Trustee Action because it is not a Claim first made during the Policy Period;

B. Declaring that Wesco has the right to recoup from the Directors & Officers all amounts Wesco has paid to date and/or will pay in the future as defense costs on behalf of the Directors & Officers in connection with the pending Trustee Action;

C. Awarding Wesco damages in an amount equal to the amount expended by Wesco as defense costs on behalf of the Directors & Officers in connection with the pending Trustee Action;

D. Awarding Wesco its attorneys' fees and costs; and

E. For such other and further relief as the Court deems just and proper.

DATED: _____

Respectfully submitted,

*/s/ Brian S. Martin*
BRIAN S. MARTIN
TBN: 13055350 - FBN: 8823
bmartin@thompsoncoe.com
CHRISTINA A. CULVER
TBN: 24078388 - FBN: 2118731
THOMPSON, COE, COUSINS & IRONS, LLP
One Riverway, Suite 1400
Houston, Texas 77056
Tel: (713) 403-8210
Fax: (713) 403-8299
BMartin@thompsoncoe.com

*and*

PETER G. THOMPSON (*Pro Hac Vice forthcoming*)
APRIL H. GASSLER (*Pro Hac Vice forthcoming*)
SPERDUTO THOMPSON & GASSLER PLC
1747 Pennsylvania Avenue, N.W.
Suite 1250
Washington, DC 20006
Tel: (202) 408-8900
Fax: (202) 409-8910
pthompson@stglawdc.com
agassler@stglawdc.com

COUNSEL FOR PLAINTIFF
WESCO INSURANCE COMPANY