Kevin D. McCullough
State Bar No. 00788005
Shannon S. Thomas
State Bar No. 24088442
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: (214) 953-0182
Facsimile: (214) 953-0185
kdm@romclaw.com
sthomas@romclaw.com

LOCAL SPECIAL LITIGATION COUNSEL FOR
SHAWN K. BROWN, CHAPTER 7 TRUSTEE

Chad P. Pugatch
LORIUM LAW
101 NE 3rd Avenue, Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
cpugatch@loriumlaw.com
Florida Bar No.: 220582

LEAD SPECIAL LITIGATION COUNSEL FOR
SHAWN K. BROWN, CHAPTER 7 TRUSTEE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | § |
| | § Case No. 17-30355 |
| PFO GLOBAL, INC., *et al.*,[1] | § |
| | § Chapter 7 |
| Debtors. | § |
| | § (Jointly Administered) |

**TRUSTEE'S MOTION, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AND COMPROMISE WITH DEBTORS' FORMER DIRECTORS AND OFFICERS AND CERTAIN RELATED PARTIES**

NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1100 COMMERCE STREET, ROOM 1254, DALLAS, TX 75202 ON OR BEFORE CLOSE OF BUSINESS ON **SEPTEMBER 15, 2023,** WHICH IS AT LEAST TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE HEREOF.

ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A

---

[1] The debtors and their respective case numbers and last four digits of U.S. tax identification numbers are as follows: PFO Global, Inc. (Case No. 17-30355, Tax ID 4332); Pro Fit Optix Holding Company, LLC (Case No. 17-30358, Tax ID 3919); Pro Fit Optix, Inc. (Case No. 17-30361, Tax ID 0492); PFO Technologies, LLC (Case No. 17-30362, Tax ID 1430 ); PFO Optima, LLC (Case No. 17-30363, Tax ID 5197); PFO MCO, LLC (Case No. 17-30365, Tax ID 4686) (collectively, the "Debtors"). The above-captioned cases shall be referred to herein as the "Bankruptcy Cases."

RESPONSE IS FILED A HEARING MAY BE HELD WITH NOTICE ONLY TO THE OBJECTING PARTY.

IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.

**TO THE HONORABLE SCOTT W. EVERETT,
UNITED STATES BANKRUPTCY JUDGE:**

NOW COMES Shawn K. Brown, Chapter 7 Trustee (the "Trustee") of the Debtors and for his *Motion, Pursuant to Federal Rule of Bankruptcy Procedure 9019, for Entry of an Order Approving Settlement and Compromise with Debtors' Former Directors and Officers and Certain Related Parties* (the "Motion") would show the Court as follows:

## INTRODUCTION

The Trustee hereby moves, pursuant to Federal Rule of Bankruptcy Procedure (the "Bankruptcy Rules") 9019(a) and Section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), for an order (the "Order"):[2] (1) approving a compromise and settlement[3] between the Trustee, on one hand, and Charles Posternack, Edward Greene, E. Dean Butler, Joseph B. Schimmel, Matthew G. Cevasco, Rudolf Suter, Mahesh Shetty, Timothy Kinnear, and Brigitte Rousseau (collectively, the "Directors and Officers" or "D&Os") on the other hand, (2) approving a compromise and settlement between the Trustee and the D&Os, on one hand, and Wesco on the other hand, and (3) making certain factual findings and approving mutual releases of claims by and between the parties, as described in more detail herein. This compromise and settlement will

---

[2] Pursuant to N.D. Tex. L.B.R. 9019-1(c), the proposed form of the Order is attached hereto as Exhibit A.

[3] The settlement and compromise contemplated herein implicates Policy No. EUW1418893 00 (together, as applicable, with any and all declarations, amendments, supplements, and endorsements, and subject to all of the policy's terms, conditions and exclusions, collectively, the "Policy"), issued by Wesco Insurance Company ("Wesco" or "Insurer").

settle and result in the dismissal with prejudice of the adversary proceedings styled *Brown v. Posternack, et al.,* United States Bankruptcy Court, Northern District of Texas, Dallas Division, Adversary No. 19-03012 ("Brown Adversary"),[4] and the declaratory action (coverage action) brought by Debtors' D&O insurance carrier, Wesco, styled *Wesco Insurance Co. v. Posternack, et al.*, Adversary No. 21-03035 ("Wesco Adversary")[5] (collectively, the Trustee, D&Os and Wesco shall be referred to as the "Parties").

The Parties have been involved in out-of-court negotiations since October of 2021. As a result, the Parties have reached a settlement ("Settlement"), subject to the Court's approval, as embodied in the Settlement Agreement attached hereto and incorporated herein as Exhibit B. The Settlement contemplates the following material terms: (i) Trustee will receive, for the benefit of the Estate, a payment of $1,075,000.00; and (ii) broad mutual releases, including releases of the D&Os, Wesco, and the Policy.

The Trustee respectfully submits that the Settlement is fair and equitable, meets the requirements for approval of settlements and such releases, represents the Trustee's prudent business judgment, was obtained through extensive arms-length negotiations, and is in the best interests of the creditors of the Debtors' Estates. Further, there is also good cause to approve this Settlement because the settlement payment will be a substantial contribution to allow the Trustee to make distributions to the creditors of the Debtors' Estates. Conversely, without the settlement payment, distributions to creditors would be significantly smaller, or possibly, nonexistent.

---

[4] Pursuant to N.D. Tex. L.B.R. 9019-1(c), the proposed form of the order dismissing the Brown Adversary is attached hereto as Exhibit C.

[5] Pursuant to N.D. Tex. L.B.R. 9019-1(c), the proposed form of the order dismissing the Wesco Adversary is attached hereto as Exhibit D.

**TRUSTEE'S MOTION, PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019, FOR ENTRY OF AN ORDER APPROVING SETTLEMENT AND COMPROMISE WITH DEBTORS' FORMER DIRECTORS AND OFFICERS AND CERTAIN RELATED PARTIES** **Page 3**

**JURISDICTION AND VENUE**

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2). The statutory basis for this Motion is Section 105 of the Bankruptcy Code. The procedural predicate for the requested relief is Bankruptcy Rule 9019.

**FACTUAL BACKGROUND[6]**

**A. Bankruptcy Case.**

2. On January 31, 2017, (the "Petition Date"), PFO Global, Inc. and its related entities, Pro Fit Optix Holding Company, LLC, Pro Fit Optix, Inc., PFO Technologies, LLC, PFO Optima, LLC, and PFO MCO, LLC, (collectively, "PFO" or the "Debtors") commenced the above-captioned Chapter 11 cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

3. The cases are being jointly administered under Case No. 17-30355 and shall collectively be referred to as the "Bankruptcy Cases".

4. On June 22, 2017, Shawn K. Brown was appointed as Chapter 11 Trustee (the "Trustee") in the Bankruptcy Cases. [Dkt. No. 222].

5. The Bankruptcy Cases were converted to cases under Chapter 7 on November 14, 2017 and Shawn K. Brown was reappointed as Chapter 7 Trustee.

6. Upon his initial appointment as Chapter 11 Trustee, the Trustee began investigating the Debtors' affairs, including analyzing all claims against the estate and looking into Debtors' former management, board members, and directors and officers.

---

[6] These are the Trustee's allegations of background facts and should not be construed as admissions of facts made or agreed to by the parties to the Settlement Agreement (defined below).

**B. The Policy.**

7. Prior to the Petition Date, Wesco issued the Directors and Officers and Public Company Liability Policy No. EUW1418893 00 to Debtors, providing certain coverage to the Debtors for the period from June 30, 2016 to June 30, 2017 (the aforementioned "Policy").

8. The Policy generally provides certain coverage to protect and indemnify the directors and officers of the Debtors in connection with any Loss (as such term is defined in the Policy), judgments, and settlements, arising from particular types of claims that might be made against them in their capacity as directors or officers of the Debtors or in connection with investigations dealing with their roles as directors or officers of the Debtors.

9. The Policy is written on a "claims made and reported basis," and the claims made by the Trustee against the D&Os who are Insureds under the Policy, as alleged in the *Complaint* (defined below) in the Brown Adversary, are the only known claims remaining against the Policy.

**C. The Adversary Proceedings and Trustee's Claims.**

10. During the time that Debtors remained as debtors-in-possession, prior to the appointment of Trustee as the Chapter 11 Trustee, Debtors sought approval from the Bankruptcy Court to sell substantially all of Debtors' assets to Debtors' largest creditor, Hillair Capital Investments, LP. [Dkt. No. 34]. Certain creditors, as well as the Official Committee of Unsecured Creditors objected, asserting that the D&Os were not acting in the Debtors' best interest and were breaching their fiduciary duties to Debtors and their respective bankruptcy estates.

11. Ultimately, a compromise was reached and approved by the Bankruptcy Court on May 5, 2017 that allowed for the sale of Debtors' assets, with the Debtors' Estates retaining an interest in the outcome of certain litigation, and moreover, preserved any and all claims that the

Estates or the Trustee may have against the D&Os for breach of their fiduciary duties or otherwise. [Dkt. No. 188].

12. After his appointment and initial investigation into Debtors' affairs, the Trustee notified Wesco by letter dated August 25, 2017 of claims the Trustee, on behalf of Debtors' Estates, had against the D&Os and that the Trustee was thereby making a demand under the Policy.

13. Wesco, as did the D&Os, denied the Trustee's assertions. Wesco also indicated that it was reserving its rights with respect to whether there was applicable coverage, regardless of the validity of the claims.

14. On January 30, 2019, Trustee commenced the Brown Adversary against the D&Os, asserting claims for breach of fiduciary duty of care, breach of fiduciary duty of loyalty, gross negligence, usurping corporate opportunity, avoidance and recovery of fraudulent transfers and unauthorized post-petition transfers.

15. The Trustee amended his complaint in the Brown Adversary on January 10, 2020 to remove the count for usurping corporate opportunity, which was dismissed by prior court order (collectively, the remaining claims shall be referred to as the "<u>D&O Claims</u>"). [Brown Adversary, Dkt. No. 57].

16. The D&Os continue to dispute the validity of the D&O Claims, have asserted numerous affirmative defenses, and made known their intention to vigorously defend their positions through trial if necessary.

17. On June 4, 2021, Wesco commenced the Wesco Adversary against the D&Os and the Trustee, seeking a judicial declaration that there is no applicable insurance coverage for the D&O Claims.

18. Both the Trustee and the D&Os take issue with Wesco's position and affirmatively assert that there is coverage under the Policy for the D&O Claims.

**D. Settlement Agreement.**

19. To date, the Parties and their respective professionals have engaged in lengthy negotiations, including mediation in October of 2021, in an effort to resolve all claims the Trustee identified or asserted against the D&Os, the Insurer, and the Policy, or that might implicate the Policy, including, without limitation claims made in the Brown Adversary as well as the coverage issues asserted in the Wesco Adversary, as more fully set forth in the Settlement Agreement (collectively, the "Claims").

20. As a result of the Parties' good-faith efforts, they have successfully resolved their contested issues and entered into the Settlement Agreement which, subject to Bankruptcy Court approval, will resolve all of the Claims without the further cost and expense of litigation.

21. The salient terms of the Settlement, as set forth in more detail in the Settlement Agreement, are summarized as follows:

(a) **Settlement Payment**: The D&Os shall cause Wesco to pay to the Trustee, for the benefit of the Debtors' Estates, the agreed Settlement Payment in the amount of $1,075,000.

(b) **Dismissal with Prejudice of Brown and Wesco Adversary Proceedings**: Within seven (7) days of the Trustee's receipt of the Settlement Payment, the Parties shall file appropriate documents with the Court to cause the dismissal of the Brown Adversary and Wesco Adversary in their entirety. *See* Exhibits C and D for the proposed form of dismissal orders.

(c) **Releases**: As of the date the Trustee receives the Settlement Payment, mutual releases will be effective, including all claims that were or could have been raised in connection with the Bankruptcy Case, the Brown and Wesco Adversaries, and the Claims, except as otherwise provided in the Settlement Agreement. In addition, upon Trustee's receipt of the Settlement Payment, the Policy shall be deemed immediately discharged, exhausted, and cancelled.

## RELIEF REQUESTED

22. The Trustee respectfully requests that this Court enter an order, the proposed form of which is attached hereto as Exhibit A, approving the Settlement Agreement attached hereto as Exhibit B and authorizing the Parties to consummate the Settlement.

### A. Settlement.

23. Bankruptcy Rule 9019 provides, in pertinent part, that "[o]n motion by the trustee and after notice and hearing the court may approve a compromise and settlement." Under Rule 9019, "[a]pproval should only be given if the settlement is 'fair and equitable and in the best interest of the estate.'" *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 355 (5th Cir. 1997) (internal quotations omitted).

24. "In deciding whether a settlement of litigation is fair and equitable, a judge in bankruptcy must make a well-informed decision, '[c]omparing the terms of the compromise with the likely rewards of litigation.'" *In re Cajun Elec.*, 119 F.3d at 355 (citations omitted). "Compromises are favored in bankruptcy" since they minimize litigation costs and expedite the administration of the bankruptcy estate. *In re Idearc Inc.,* 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009) (*citing Martin v. Martin*, 91 F.3d 389, 393 (3d Cir. 1996)). The bankruptcy court, however,

should not substitute its own judgment for the judgment of a trustee or a debtor. *See In re Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), *aff'd*, 50 B.R. 764 (S.D.N.Y. 1985). "One of the goals of Congress in fashioning the Bankruptcy Code was to encourage parties in a distress situation to work out a deal among themselves." *In re Mirant Corp.*, 334 B.R. 800, 811 (Bankr. N.D. Tex. 2005). Thus, in assessing a settlement, a court need only "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)).

25. In particular, the Court should evaluate the following factors ("*Cajun Electric Factors*"): (1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; (3) the interests of creditors with proper deference to their reasonable views; and (4) the extent to which the settlement is truly the product of arm's length negotiations. *Mirant*, 348 B.R. at 739-40 (citing *Cajun Electric Power Coop. Inc.*, 119 F.3d at 355-56) (citations omitted)).

26. As set forth in greater detail below, the terms of the Settlement Agreement satisfy the *Cajun Electric* Factors.

   (a) **Probability of Success:** The D&O Claims alleged against the D&Os in the Brown Adversary involve complex factual and legal issues, all of which are contested by the parties in that proceeding. While there is direct and substantial evidence of compliance failures, there are issues concerning whether those failures were the proximate cause of the Debtors' downfalls. Additionally, there are issues related to the potential application of Nevada law to the case which could prove to be

outcome-determinative in favor of all or some of the D&Os. While the Trustee has built a strong case, it is impossible to negate the risk of an adverse judgment. In addition, there are coverage issues raised in the Wesco Adversary which could, if successful, reduce the probability of collection of any judgment obtained by the Trustee in the Brown Adversary.

(b) **Complexity and likely duration of the litigation and any attendant expense, inconvenience and delay**: The evidence necessary to prove the D&O Claims is considerable and costly. Multiple expert witnesses would be necessary to address accounting, management, and damages issues. As well, if the years of litigation and significant defense costs already incurred – and deducted from the Policy Limits thus far – is any indication of how continued litigation and ultimately trial would proceed, the Policy would likely be substantially reduced well before the completion of discovery and trial. The Wesco Adversary adds another layer of litigation and attendant expenses and could also result in significant delay in the resolution of the underlying Brown Adversary.

(c) **Interests of Creditors**: The Settlement guarantees a minimum cash infusion into the Estates of $1,075,000. While the Trustee's alleged damages calculation far exceeds this recovery, the alternative to this Settlement is not appealing, as it means collecting from the individual D&Os if the Trustee is successful in the Brown Adversary and the coverage issue is resolved adversely to the Trustee and the D&Os in the Wesco Adversary.

(d) **Product of arm's length negotiations**: Settlement negotiations were structured in a manner customarily used by the Insurer, whereby the Parties consented to

mediation with a JAMS mediator. There is no room for collusive side deals in that process, nor would the Trustee, who has decades of service as bankruptcy professional in the Northern District, engage in such behavior. Negotiations post-mediation were spirited and conducted only after substantial ongoing discovery.

27. Based on these considerations, entering into the Settlement is a prudent exercise of the Trustee's business judgment, as it guarantees a significant recovery to the Estates, whereas the alternative only guarantees an uncertain outcome and speculative recovery even if the Trustee wins at trial in the Brown Adversary and prevails in any appeal.

## CONCLUSION

28. For the reasons stated above, the Trustee respectfully submits that the Settlement meets the applicable legal standards for approval, including satisfying all four of the *Cajun Electric* Factors, is in the best interest of the Debtors' Estates and their creditors, and represents the exercise of the Trustee's sound and prudent business judgment. Moreover, the Settlement will result in meaningful cash to the Estates and avoids lengthy, burdensome, and expensive litigation.

WHEREFORE, PREMISES CONSIDERED, the Trustee respectfully requests that this Court enter an Order, substantially in the form of the proposed Order attached hereto as Exhibit A: (a) granting the Motion; (b) approving the terms of the Settlement Agreement; (c) finding that no other or further notice is required beyond N.D. Tex. L.B.R. 2002-1(f); and (d) granting any further relief as the Court deems just and proper.

Dated: August 24, 2023.

Respectfully submitted,

*/s/ Shannon S. Thomas*
Kevin D. McCullough
State Bar No. 00788005
Shannon S. Thomas
State Bar No. 24088442
ROCHELLE McCULLOUGH, LLP
325 N. St. Paul Street, Suite 4500
Dallas, Texas 75201
Telephone: 214-953-0182
Facsimile: 214-953-0185
kdm@romclaw.com
sthomas@romclaw.com

Chad P. Pugatch
Florida Bar No.: 220582
Jason E. Slatkin
Florida Bar No.: 40370
LORIUM PLLC
101 NE 3rd Avenue, Suite 1800
Fort Lauderdale, FL 33301
954-462-8000
cpugatch@loriumlaw.com
jslatkin@loriumlaw.com

Counsel for Shawn K. Brown,
Chapter 7 Trustee